UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

MONIQUE FEASTER,

   - against -

CITY OF MIDLETOWN, AHMED ARTOLA,
both in his individual and official
capacity, ERIC HARGET, both in his individual
and official capacity, SGT. JOSEPH TOBIN,
both in his individual and official
capacity, and "JOHN DOES," 1-10, both in
their individual and official capacities, the
identity and number of whom is presently
unknown to the plaintiff.
----------------------------------------------------X

Docket No. 7:16-cv-00734-VB

**MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. 1

Standard of Review ................................................................................................. 3

Argument ................................................................................................................. 3

I. False Arrest............................................................................................................ 3

II. Excessive Force ................................................................................................... 5

III. Monell Claim ...................................................................................................... 7

IV. State Law Claims ............................................................................................... 10

V. Conclusion ........................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J., 435 F. App'x 18, 25 (2d Cir. 2011)...........10

Atwater v. City of Lago Vista, 532 U.S. 318, 121, S. Ct. 1536 (2001) .........................................5

Bauer v. Norris, 713 F.2d 40 (8th Cir 1983) ..................................................................................7

Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) ..............................3

Brown v. City of New York, 95 N.Y.2d 389, 393 (2000) ........................................................10, 11

Calamia v. City of New York, 879 F.2d 1025 (2d Cir 1989)...........................................................6

Caldarola v. Calabrease, 298 F.3d 156 (2d Cir 2002) ...................................................................4

California v. Hodari D., 499 U.S. 621, 626; 113 L. Ed. 2d 690; 111 S. Ct. 1547 (1991) ..............6

Cambers v. Pennycook, 641 F.3d 898 (8th Cir 2011) ....................................................................7

Chamberlain v. City of White Plains, 986 F.Supp.2d 363 (SDNY 2013) ...................................10

City of Canton, 489 U.S. 378 (1989).............................................................................................8

Conley v. Gibson, 355 U.S. 41 (1957)..................................................................................3
Davis v. Mason Co., 927 F.2d 1473 (9th Cir 1991) ...........................................................9
Fiancco v. City of Rensselaer, 783 F2d 319 (2d Cir. 1986)...........................................10
Fishl v. Armitage, 128 F3d 50 (2d Cir 1997).....................................................................3
Gentile v. County of Suffolk, 926 F2d 142 (2d Cir 1991).................................................9
Graham v. Connor, 490 US 386, 109 S. Ct. 1865 (1989)..................................................5
Gravelet-Blondin v. Shelton, 728 F.3d 1086 (9th Cir 2013).............................................6
Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir 2008).........................................................7
Headwaters Forest Defense v. County of Humboldt, 240 F. 3d 1185, 1904 (9th Cir. 2000) ..........7
Holmes v. Village of Hoffman Estate, 511 F3d 673 (7th Cir 2007) ..................................6
Hudson v. McMillian, 503 U.S. 1 (1992) ...........................................................................6
Leeds v. Meltz, 85 F3d 51 (2d Cir 1996)............................................................................3
Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir 2013) ......................................6
Mayard v. Hopwood, 105 F.3d 1226 (8th Cir 1997) ..........................................................7
McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) .....................................................3
Michigan v. DeFillippo, 443 U.S. 31, 99 S. Ct. 2627 (1979) ...........................................4
Monroe v. Pape, 365 U.S. 167, 180 (1961)........................................................................3
Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).......................................8
Moss v. US Secret Service, 711 F.3d 941 (9th Cir 2013)...................................................7
Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).........................................................8
Rollins v. Willett, 770 F.3d 575, 576-77 (7th Cir. 2014)...................................................5
Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir 1992) ...............................................9
Sanders v. Duke, 766 F.3d 1262 (11th Cir 2014)...............................................................7
Singer v. Fulton Co. Sheriff, 63 F.3d 110 (2d Cir 1995)...................................................4
Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010) ..............................................................7
United States v. Classic, 313 U.S. 299, 326 (1941)...........................................................3
Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995)..................................................10
Verponi v. City of N.Y., 930 N.Y.S.2d 177, at *5 (Sup. Ct. 2011)..................................11
Villar v Howard, 126 A.D.3d 1297, 6 N.Y.S.3d 811 (4th Dept 2015)............................10
Vineyard v. County of Murray, 990 F2d 1207 (11th Cir. 1993).........................................9
Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ......................................8
Wall v. County of Orange, 364 F.3d 1107 (9th Cir 2004) .................................................6
Weyant v. Okst, 101 F.3d 845 (2d Cir 1996) .....................................................................4
Wilkins v. Gaddy, 130 S. Ct. 1175 (2010)......................................................................6, 7
Zellner v. Summerlin, 494 F3d 344 (2d Cir 2007) .............................................................5

## I. <u>Standard of Review</u>

A court may not dismiss a complaint under Rule 12(b)(6) unless "it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) (emphasis added).

On a motion to dismiss, the burden lies with the moving party. The well-pleaded allegations of the Complaint are presumed true, all doubts and inferences are resolved in the pleader's favor. The Court must view the Complaint in the light most favorable to Plaintiff. <u>Leeds v. Meltz</u>, 85 F3d 51 (2d Cir 1996).

The possibility of a claim is enough to defeat a motion to dismiss. <u>Bowers v. Hardwick</u>, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). "Credibility assessment, choices between conflicting versions of events, and the weighing of evidence are matters for the jury," not a basis for a pre-trial motion to dismiss. <u>Fishl v. Armitage</u>, 128 F3d 50 (2d Cir 1997); <u>see also</u> <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004) ('A party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment').

## ARGUMENT
## I.  <u>COMPLAINT DOES STATE A CLAIM FOR FALSE ARREST</u>

In <u>Monroe v. Pape</u>, 365 U.S. 167, 180 (1961), the Supreme Court held that acts performed by a police officer in his capacity as a police officer, even if illegal or not authorized by state law, are acts taken 'under color of' law. As the Supreme Court further stated in <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law."

The elements of a false arrest claim under both 1983 and the Fourth Amendment are substantially similar to those of a false arrest claim under state law. <u>Weyant v. Okst</u>, 101 F.3d 845 (2d Cir 1996). Plaintiff must demonstrate that: (1) defendant intended to confine her, (2) she was conscious of her confinement, (3) she did not consent to be confined, and (4) confinement was not otherwise privileged. <u>Singer v. Fulton Co. Sheriff</u>, 63 F.3d 110 (2d Cir 1995).

The Court must look to the totality of circumstances in determining whether probable cause existed. <u>Caldarola v. Calabrese</u>, 298 F.3d 156 (2d Cir 2002). For probable cause to exist, the "facts and circumstances within the officer's knowledge (at the time of the arrest) must be sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 99 S. Ct. 2627 (1979).

Defendants appear to rely solely upon plaintiff's conviction, by virtue of her guilty plea, of "Failed to Use Designated Lane" as the basis of their motion to dismiss her false arrest claim.

And while Defendants have certainly cited to the general rule (a subsequent conviction as defeating a claim of lack of probable cause), they miss one exception which applies here – where the conviction was for an offense completely unrelated to the predicate for the false arrest claim.

In the instant case, clearly plaintiff was *not* arrested for violating the Vehicle and Traffic Law, based upon the plain wording of the arrest report. She was clearly arrested for the sole charge of "Resisting Arrest."

As such, her subsequent plea to "Failed to Use Designated Lane" had nothing to do with her actual arrest. There is no indication she was arrested for "Failed to Use Designated Lane," or that her "Resisting Arrest" charge was directly related to her motor vehicle violation. If anything, it was an indirect byproduct of same.

This is thus distinguishable from <u>Atwater v. City of Lago Vista</u>, in which the Supreme

Court held a custodial arrest for a minor traffic violation did not violate the 4th Amendment. 532 U.S. 318, 121, S. Ct. 1536 (2001). Here, plaintiff was not arrested for a traffic violation – she was arrested for Resisting Arrest – a charge which was clearly dismissed. Rollins v. Willett, 770 F.3d 575, 576-77 (7th Cir. 2014) (False arrest claim survives motion to dismiss despite clear plea to driving with a suspended; however, the Fourth Amendment claim dealt with the police allegedly unconstitutionally forcing him to get back in his car and show them his driving papers; plaintiff's claim is thus one of unlawful seizure unrelated to the motor vehicle violation).

In footnote 3, Defendants claim plaintiff also cannot claim lack of probable cause for her arrest because she admits initially refusing to produce her license. However, not only did plaintiff ultimately produce her license, more importantly she was *not* arrested for her failure to produce her license – she was only arrested for allegedly resisting arrest[1].

## II.  COMPLAINT STATES A CLAIM FOR EXCESSIVE FORCE

The Supreme Court has held that the use of excessive force during an arrest is judged by Fourth Amendment standards. Graham v. Connor, 490 US 386, 109 S. Ct. 1865 (1989). The Court must determine as a threshold matter whether the use of force was objectively reasonable given the circumstances. The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The law is clearly established that the intentional use of any "physical force constitutes a seizure under the Fourth Amendment." California v. Hodari D., 499 U.S. 621, 626; 113 L. Ed.

---

[1] At this stage, especially given that defendants did not address it in their motion, the issue of qualified immunity should not be dealt with. Cf. Zellner v. Summerlin, 494 F3d 344 (2d Cir 2007) ('arguable' probable cause must not be understood to mean 'almost' probable cause).

2d 690; 111 S. Ct. 1547 (1991) (further holding that 'An arrest is effected by the slightest application of physical force').

The reason why this is relevant is because it is the *unlawful seizure* which gives rise to the constitutional violation. As a result, once excessive *force* is employed, then the result of that force (i.e., any injury) *does not matter* to sustain the claim itself – it is only relevant as to damages. Cf. Hudson v. McMillian, 503 U.S. 1 (1992) (serious physical injury need not be alleged to establish excessive force in the prisoner context[2]); Wilkins v. Gaddy, 130 S.Ct. 1175 (2010) (excessive force claim cannot be rejected because the injuries are de minimum).

This is why we see claims of excessive force sustained for cases involving pepper spraying, Tasering, or tight handcuffing – it's because the violation occurs upon the fact of the pepper spraying, Tasering or tight handcuffing itself, not whether the complainant necessitated medical attention. See, e.g., Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir 2013) (use of pepper spray may in itself constitute excessive force); Wall v. County of Orange, 364 F.3d 1107 (9th Cir 2004) (well-established that overly tight handcuffing can constitute excessive force); Gravelet-Blondin v. Shelton, 728 F.3d 1086 (9th Cir 2013) (clearly established that use of taser in dart mode against passive bystander amounts to excessive force).

Plaintiff need not allege she suffered a serious physical injury to sustain a 1983 claim. Hudson v. McMillian, 503 U.S. 1 (1992). Indeed, numerous courts have held that minor injuries, or even substantial pain, is sufficient to sustain a claim. Calamia v. City of New York, 879 F.2d 1025 (2d Cir 1989) (tight handcuffs kept on for several hours causing substantial pain amounts to excessive force); Holmes v. Village of Hoffman Estate, 511 F3d 673 (7th Cir 2007) (minor injuries does not preclude an excessive force claim); Mayard v. Hopwood, 105 F.3d 1226 (8th Cir

---

[2] "The Eighth Amendment analysis adopted by the Supreme Court poses far more demanding proof of intent to cause pain than the Fourth Amendment. Thus, if serious injury is not required in an Eighth Amendment analysis, it is surely not required under the Fourth Amendment." POLICE MISCONDUCT: LAW AND LITIGATION, 3d Ed., Avery,

1997) (slapping detainee in the face and punching him in chest would violate constitutional rights).

Indeed, the Supreme Court clarified that "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins v. Gaddy, 130 S. Ct. 1175 (2010). And if even de minimus injury suffices in the Eighth Amendment context, there should be no different rule in the Fourth Amendment context. Cf. Cambers v. Pennycook, 641 F.3d 898 (8th Cir 2011).

As such, where no force whatsoever is justified in the first place, then use of any force should be seen as excessive. Headwaters Forest Defense v. County of Humboldt, 240 F. 3d 1185, 1904 (9th Cir. 2000); Sanders v. Duke, 766 F.3d 1262 (11th Cir 2014) (slamming detainee's head against pavement was excessive), Moss v. US Secret Service, 711 F.3d 941 (9th Cir 2013) (shoving protesters constituted excessive force), Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir 2008) (punching plaintiff constituted excessive force; plaintiff's conviction for resisting arrest would not bar claim if he was not, in fact, resisting arrest at the time he was punched), Bauer v. Norris, 713 F.2d 40 (8th Cir 1983) (where plaintiff did not physically resist arrest or physically threaten the officer, held that any force used was excessive).

Finally, while it may be argued that defendants' use of force was justified, this is a factual issue which should be submitted to a jury. Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010) ("because resistance to arrest 'does not give the officer license to use force without limit' in response, 'there is no inherent conflict between a conviction for resisting arrest ... and a finding that the police officers used excessive force'")

## III. THE COMPLAINT STATES A MONELL CLAIM

---

Rudovsky, Blum & Laurin, Thomson Reuters (2015-2016).

The Second Circuit has established a two-pronged test that a plaintiff must satisfy before recovering from a municipality under Section 1983. <u>Moray v. City of Yonkers</u>, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). First, a plaintiff must "prove the existence of a municipal policy or custom" to show that the municipality took some action beyond merely employing the misbehaving officers. <u>Vippolis v. Vill. of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985). Second, the plaintiff must establish a causal connection between the policy and the alleged civil rights violation. <u>Id</u>.

To satisfy the first prong on a motion to dismiss, Plaintiff must allege the existence of one of the following:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. Moray, 924 F. Supp. at 12 (internal citations and quotation marks omitted).

Municipal liability may be predicated upon a single incident. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986). Plaintiff must prove that decisions regarding training were made with deliberate indifference to the rights of suspects. <u>City of Canton</u>, 489 U.S. 378 (1989).

Plaintiff's first amended complaint alleges both that the City of Middletown enacted a sham training procedure for its officers – one bound to result in acts of misconduct, and that it also enacted a sham investigatory procedure regarding acts of police misconduct by its own officers – and in that way condoning acts of police misconduct. After all, if officers knew they weren't going to be closely investigated, much less disciplined, for acts of misconduct, why be

8

restrained in their behavior towards citizens?

Plaintiff may also establish deliberate indifference by demonstrating the city's failure to properly train its officers in a specific area in which it is obvious officers should be trained. Davis v. Mason Co., 927 F.2d 1473 (9th Cir 1991) (failure to train officers in legal limits of use of force constitutes 'deliberate indifference').

The city here cannot shield itself merely because it offered a course covering the subject of "use of force" on a paper-level, regardless of how substandard the content and quality of the training is. Russo v. City of Cincinnati, 953 F.2d 1036 (6th Cir 1992). The need for *specialized* training of police officers in the area of use of force – especially given that police officers carry guns, clubs and other weapons, is well-recognized[3].

In the instant matter, if the City inadequately trained its officers and/or failed to ascertain whether its officers actually learned anything in the training which was implemented, this should be found insufficient as a matter of law. Some minimal discovery should be allowed in order to explore what training was given to officers on the use of force.

Additionally, the failure to adequately discipline officers for acts of misconduct is a sufficient basis for a municipal liability claim. Gentile v. County of Suffolk, 926 F2d 142 (2d Cir 1991).

Liability may be sustained where a municipality has inadequate procedures for handling complains against officers, coupled with inadequate policies and procedures manual. Vineyard v. County of Murray, 990 F2d 1207 (11th Cir. 1993).

---

[3] See, e.g., Final Report of the President's Task Force on 21st Century Policing (May 2015), available at http://www.cops.usdoj.gov/pdf/taskforce/TaskForce_FinalReport.pdf, website for Community Oriented Policing Services (COPS) United States Department of Justice. Within the website, the COPS Office provides an extensive list of reports and studies on the use of force, and the Police Training Officer Program is described in detail. See also Emerging Use of Force Issues, Balancing Public Safety and Officer Safety, Report from the International Association of Chiefs of Police (March 2012); FBI Training on the New Federal Deadly Force Policy, John C. Hall (1996).

Moreover, if a municipality has an investigatory procedure, but it is not a "meaningful" one, this may also sustain a claim of liability.  Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995) (municipal liability may be proven by showing no meaningful investigation of civil rights complaints); see also Fiancco v. City of Rensselaer, 783 F2d 319 (2d Cir. 1986) (validity of such claims is irrelevant; the very assertion of a number of such claims put City on notice of a possible problem of excessive force).

In the instant matter, plaintiff has alleged more than "conclusory facts."  She's instead submitted case-specific details – her own complaint, which was effectively met with hostility and all but thrown in the garbage (perhaps was) upon her leaving the police station.  Such a sham investigatory procedure is no procedure at all – and more importantly, announces to officers in the City of Middletown that they won't be disciplined for acts of police misconduct.

## IV.  STATE LAW CLAIMS SHOULD SURVIVE

"New York courts have explained that the purpose of Section 50-e's requirement of a notice of claim is to permit the defendant to conduct a proper investigation and assess the merits of the claim." Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J., 435 F. App'x 18, 25 (2d Cir. 2011) (summary order); see Brown v. City of New York, 95 N.Y.2d 389, 393 (2000) ("Reasonably read, the statute does not require those things to be stated with literal nicety or exactness. The test of the sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the city to investigate. Nothing more may be required."); see also Villar v Howard, 126 A.D.3d 1297, 6 N.Y.S.3d 811 (4th Dept 2015) (notice of claim not required to be served on individuals unless the city is statutorily obligated to indemnify them, as opposed to contractually obligated)..

As stated in Chamberlain v. City of White Plains, 986 F.Supp.2d 363 (SDNY 2013) "the

primary inquiry regarding a Notice of Claim 'is not whether [the individuals] were identified by name in the Notice of Claim, but whether they were described sufficiently for the [municipality] to be able to investigate the claim,' Verponi v. City of N.Y., 930 N.Y.S.2d 177, at *5 (Sup. Ct. 2011) (unpublished Table decision) (emphasis added). As long as the Notice of Claim "includes information sufficient to enable the city to investigate" and identify the municipal employees involved, Brown, 95 N.Y.2d at 393 (internal quotation marks omitted), a failure to specifically name individual defendant employees should not bar suit against them.'"

In the instant case, a notice of claim was timely served upon the City of Middletown, and specifically named Defendant Artola. The same attorneys who currently represent the Defendants also represented the City when the City elected to take plaintiff's 50-h deposition. At no point in that process did the City indicate to plaintiff's counsel that it needed more facts upon which to adequately investigate the claim. As such, defendant simply makes a meritless argument to now claim the individual defendants were prejudiced because they didn't receive a copy of the notice from plaintiff's counsel.

As such, because the original notice of claim sufficiently allowed the City to investigate the claim, plaintiff's state law claim should not be dismissed.

## CONCLUSION

This Court should not dismiss plaintiff's complaint and should allow her discovery in an effort to prove her claims.

Dated: September 14, 2016

David Bliven (DB 4867)
Attorney for Plaintiff
445 Hamilton Ave, Ste 607
White Plains, NY 10601
(914) 468-0968

11